## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 24-123-RGA |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| VIDEOAMP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### <u>NIELSEN'S OPPOSITION TO VIDEOAMP INC.'S MOTION TO DISMISS</u>

OF COUNSEL:

Steven Yovits
Douglas Lewis
Andrew Wood
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Scott W. Doyle
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Tel: (202) 342-8400

Joshua B. Long
KELLEY DRYE & WARREN LLP
515 Post Oak Boulevard, Suite 900
Houston, TX 77027
Tel: (713) 355-5000

Dated: May 20, 2024
11514013/14944.00009

David E. Moore (#3983)
Bindu A. Palapura (#5730)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ........................................................................ 1

II.   FACTUAL BACKGROUND ......................................................................... 2

      A.    Media Viewing Data and Problems in the Prior Art ............................ 2

      B.    The Asserted Patents' Real-World Solution to Prior Art Problems ..................... 3

III.  ARGUMENT ............................................................................................. 4

      A.    Claim 1 of the '058 Patent is not Representative and VideoAmp Fails to Analyze Key Limitations of Other Asserted Claims ............................................. 4

      B.    The Asserted Claims Are Patent Eligible Under the *Alice* Test ........................... 6

            1.    The Asserted Claims Are Not Directed to Abstract Ideas Under Step One of The *Alice* Test ................................................................. 6

            2.    The Asserted Claims Are Patent Eligible Under Step Two of The *Alice* Test ................................................................................. 16

      C.    At a Minimum, Factual Issues Prevent Dismissal of the Case at this Stage ........ 20

IV.   CONCLUSION ........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014) ................................................................ 1-2, 6, 17

*Amdocs (Israel) Limited v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ................................................................ 8-10

*Barry v. SeaSpine Holdings Corp.*,
C.A. No. 21-806-RGA, 2022 WL 605816 (D. Del. Jan. 26, 2022) ...........................................6

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ................................................................ 6, 16-17, 19

*Buffalo Pats., LLC v. Motorola Mobility LLC*,
No. 22-CV-04540, 2023 WL 5858921 (N.D. Ill. Sept. 11, 2023) ...........................................8

*CardioNet, LLC v. InfoBionic, Inc*,
955 F.3d 1358 (Fed. Cir. 2020) ................................................................11

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ................................................................16

*Electric Power Group, LLC. v. Alston, S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ................................................................15

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ................................................................7

*G Licensing, S.A. v. HTC Corp.*,
C.A. No. 17-83-LPS, 2019 WL 2904670 (D. Del. July 5, 2019) ...........................................13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ................................................................ passim

*Olympus Corp. v. Maxell, Ltd.*,
C.A. No. 18-216-MN, 2018 WL 5962471 (D. Del. Nov. 14, 2018) ...........................................7

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
C.A. No. 19-1903-RGA, D.I. 27, Order (D. Del. July 6, 2020) ...................................... 2-3, 18

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ................................................................16

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)...........................................................................................15

*Sapphire Crossing LLC v. Quotient Tech, Inc.*,
  C.A. No. 18-1717-MN-CJB, 2020 WL 1550786 (D. Del. Apr. 1, 2020) ......................2, 17, 18

*TakaDu Ltd. v. Innovyze, Inc.*,
  C.A. No. 21-291-RGA, 2022 WL 684409 (D. Del. Mar. 8, 2022)................................... 11-12

*The Nielsen Co (US), LLC v. TVision Insights, Inc.*,
  C.A. No. 21-1592-CJB, 2022 WL 3226318(D. Del. Aug. 10, 2022) .......................... 14, 16-17

*Topia Tech., Inc. v. Egnyte, Inc.*,
  C.A. No. 21-1821-CJB, 2023 WL 4364160 (D. Del. July 6, 2023) .......................................17

*VB Assets, LLC v. Amazon.com, Inc.*,
  C.A No. 19-1410-MN, 2020 WL 5549088 (D. Del. Sept. 16, 2020) .......................................5

*VideoLabs, Inc. v. Meta Platforms, Inc.*,
  C.A. No. 22-680-JHS, 2024 WL 1716665 (D. Del. Apr. 22, 2024) ..........................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 10(c) .............................................................................................................17

Fed. R. Civ. P. 12(b)(6)............................................................................................................2

## I.    SUMMARY OF ARGUMENT

The Court should deny VideoAmp's motion because the asserted claims of U.S. Patent Nos. 11,871,058 ("the '058 patent") and 11,856,250 ("the '250 patent") (collectively, the "Asserted Patents") are not directed to abstract ideas. Rather, the asserted claims recite specific technological solutions to prior art problems and constitute improvements to technologies. Moreover, as demonstrated in the specification of the Asserted Patents, as well as by the declaration of Nielsen's expert witness attached to the Complaint, the asserted claims of both Asserted Patents recite inventive concepts.

At *Alice* Step one, the Court should find that the asserted claims are directed to patent-eligible subject matter. *See Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). The asserted claims are far from abstract, as they recite real-world solutions to prior art problems with systems for media audience measurement. In particular, prior art systems required the use of expensive, specialized devices (i.e., media content meters) to collect useful data about audiences. The Asserted Patents, however, disclose using common set-top boxes (referred to by the Asserted Patents as "media tuners") as the primary data source. In the prior art, data collected from the media tuners was not usable for audience measurement. But the Asserted Patents disclose transforming data collected from media tuners to approximate data collected by media content meters. This predicted "presentation data" mimics the characteristics of data collected from media content meters, without deploying costly additional media content meters to collect such data directly. The asserted claims thus solve the prior art problem by converting large sets of tuning data into predicted "presentation data," transforming the tuning data and rendering it suitable for use in media measurement. Both the Federal Circuit and this Court have repeatedly held that similar claims reciting this type of data transformation are patent-eligible.

Even if the Court were to find that the asserted claims are directed to an abstract idea, it should still hold that the claims are patent-eligible at *Alice* Step two because they recite a combination of elements that was not well-understood, routine, or conventional at the time of the invention. *Alice*, 573 U.S. at 217-18 (2014). Indeed, Nielsen has presented evidence regarding the claims' inventiveness from the specification of the Asserted Patents, as well as an expert witness declaration attached to the complaint. These statements must be accepted as true for the purposes of this Rule 12(b)(6) motion to dismiss. *See Sapphire Crossing LLC v. Quotient Tech, Inc.*, C.A. No. 18-1717-MN-CJB, 2020 WL 1550786, at *2-4 (D. Del. Apr. 1, 2020); *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, C.A. No. 19-1903-RGA, D.I. 27, Order (D. Del. July 6, 2020) (declining to even consider *Alice* Step one where the complaint made sufficient allegations that the claimed invention was not conventional).

## II.    FACTUAL BACKGROUND

### A.    Media Viewing Data and Problems in the Prior Art

The Asserted Patents describe techniques for improving audience measurement technology by modeling audience viewing behavior. D.I. 1, Ex. A, Cover; D.I. 1, Ex. B, Cover.[1] As the patents explain, audience measurement entities ("AMEs") seek to obtain data regarding media (*e.g.*, television) consumption habits of audiences. D.I. 1, Ex. A, 2:30-32. One type of data that AMEs may collect includes information obtained directly from media tuners such as "from a set-top box ('STB') connected to a television." *Id*. at 2:40-42. This STB "tuning data" provides the AME with information including to which channel a device was tuned, and for how long.

However, tuning data is an imprecise measure of audience viewing habits, as it may significantly overcount audience viewing sessions. More specifically, since tuning data carries

---

[1] The Asserted Patents share a common specification. While citations herein are made with reference to the specification of the '058 patent, all citations are applicable to both patents.

no information about what was *actually displayed* on the TV (as opposed to what was sent to the TV from the media tuner), it will inevitably include sessions where nobody was actually viewing the content associated with the tuner (i.e., times when "the media output device [*e.g.,* television] is turned off [or] not receiving the media from the media presentation device, etc.") (*Id*., 2:65-67)—a situation often described as the "phantom viewing" phenomenon. *See* D.I. 1, Ex. C, ¶¶ 9, 12, 22. Thus, while tuning data is a readily available source of data, its use by AMEs has been limited because this data is "skewed and inaccurate," and therefore not suited to the needs of the customers of AMEs. D.I. 1, Ex. C, ¶ 23.

A more robust measure of audience viewing habits relies on monitoring media presentation activity, which allows an AME to extract information about who is actually "viewing" (or "listening" to) the presented media. *Id*., 3:23-25; D.I. 1, Ex. C, ¶ 13. The common specification explains that AMEs may collect this "presentation session" data using a specialized media content meter (such as a local people meter ("LPM")). D.I. 1, Ex. A, 3:57-67; D.I. 1, Ex. C, ¶ 13. While such "data more accurately reflects media consumption" (D.I. 1, Ex. C, ¶ 9), it is only available for audience members who "enlist[] to be monitored, [or] who divulge and/or otherwise share their media activity." D.I. 1, Ex. A, 3:21-22. On the other hand, while tuning data is readily available (D.I. 1, Ex. C, ¶¶ 9, 13), it suffers from inaccuracies that render the data unsuitable for use by AMEs. D.I. 1, Ex. A, 14:43-49 ("Tuning data may be inaccurate because tuning data assumes that the media output device 104 is on and a viewer is present whenever the media presentation device is on."). Therefore, presentation session data collected by LPMs from cooperating audience members was the primary source of useful data in prior art systems.

**B.    The Asserted Patents' Real-World Solution to Prior Art Problems**

The patented approach solves the prior art "phantom viewing" problem using a novel technique for transforming tuning data for which no corresponding presentation data is available

into data that is suitable and sufficiently accurate for use by AMEs and their customers. D.I. 1, Ex. C, ¶¶ 10, 14. In particular, the claims of the Asserted Patents describe collecting tuning session data (e.g., STB data) and a second source of data (e.g., presentation session data) for media presentation environments, and subsequently creating a *model* that describes the relationship between tuning session data and presentation session data when both are available. *Id*., ¶ 14. The Asserted Patents further describe the novel approach of using that model to obtain *expected* presentation session data for media presentation environments where presentation session data is not available. Specifically, the Asserted Patents claim the use of estimation techniques to transform the tuning data into data that closely approximates the characteristics of presentation data, thereby solving the problem of inaccurate tuning data. *Id*.; *see also* D.I. 1, Ex. A, 4:4-10, 7:19-28, 7:57-8:4. Using this model, the Asserted Patents describe estimating the presentation sessions for tuning data for which no presentation session data is available. D.I. 1, Ex. C, ¶ 15; D.I. 1, Ex. A, 4:41-50, 8:6-11. The innovation of the Asserted Patents, reflected in all the claims, is to use a second source of data—data that, for example, incorporates on/off duration and what the television is displaying—to correct phantom viewing sessions in tuning data. D.I. 1, Ex. A, 2:61-3:14, 24:4-30; D.I. 1, Ex. C, ¶ 16.

By transforming this tuning data to correct for phantom viewing sessions, the Asserted Patents provide a real-world solution to a prior art problem.

## III.    ARGUMENT

### A.    Claim 1 of the '058 Patent is not Representative and VideoAmp Fails to Analyze Key Limitations of Other Asserted Claims

VideoAmp incorrectly argues that claim 1 of the '058 Patent is "representative for the § 101 analysis," and its motion proceeds to only address the limitations recited in that claim. D.I. 9 at 4-7. As explained below, claim 1 recites patent-eligible subject matter. In addition, asserted

claims 4, 5, 18, and 19 of each of the Asserted Patents[2] recite limitations beyond those present in claim 1 of the '058 Patent —specifically, claims 4 and 18 recite that "multiple ones of the tuning session durations [are] *within a threshold extent of similarity of the given tuning session duration*," and claims 5 and 19 recite that "the threshold extent of similarity is a threshold of time similarity."

These claims recite specific, concrete details regarding the patents' key innovation—the process of creating expected presentation session data based on the claimed model. D.I. 1, Ex. C, ¶ 16. This is precisely one of the elements that VideoAmp argues is absent from the purportedly "representative" claim 1. D.I. 9 at 9 (asserting that in claim 1, "[t]he specifics of the underlying statistical model are not claimed."). VideoAmp offers no explanation for its failure to consider the additional limitations of claims 4, 5, 18, and 19 of the Asserted Patents, simply remarking that "[c]laims that depend from these independent claims are substantively similar" and "[d]ependent claims 4, 5 and 9 recite generic considerations of the statistical model." D.I. 9 at 6. But VideoAmp provides no analysis to support its assertion that claims 4, 5, 18, and 19 do not provide additional detail that should be considered for analysis under § 101.

Since claims 4, 5, 18, and 19 of the Asserted Patents add substantive elements that VideoAmp specifically argues are missing from claim 1, VideoAmp's attempt to treat claim 1 as representative should be rejected. VideoAmp's failure to provide any analysis as to the patentability of the specific limitations of claims 4, 5, 18, and 19 of the Asserted Patents warrants dismissal of VideoAmp's motion at least as to those claims. *See VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 19-1410-MN, 2020 WL 5549088, at *3 (D. Del. Sept. 16, 2020) (declining to address eligibility of any claims other than those "specifically mentioned in Defendants' motion"

---

[2] Both patents assert matching sets of claim numbers: claims 1-5, 9, 11, 14-19, and 22.

when the claims discussed in the motion were "not representative"). But as explained below, even if claim 1 is treated as representative, that claim is directed to patent-eligible subject matter.

**B.      The Asserted Claims Are Patent Eligible Under the *Alice* Test**

Whether the claims of the Asserted Patents are patent eligible depends on the two-step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). "First, we determine whether the claims at issue are directed to" a patent-ineligible concept. If so, "we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1366 (Fed. Cir. 2018). As to *Alice* Step one, the asserted claims are directed to patent-eligible subject matter. As shown below, the Federal Circuit and this Court have consistently found claims directed to a specific technological process that improves upon the prior art—like the claims of the Asserted Patents—are patent eligible at *Alice* Step one. With respect to *Alice* Step two, Nielsen's Complaint alleges facts regarding the claims' inventiveness that prohibits dismissal.

**1.      The Asserted Claims Are Not Directed to Abstract Ideas Under Step One of The *Alice* Test**

**a.      The Asserted Claims of the Asserted Patents Recite Specific, Technical Solutions in the Field of Media Measurement**

As the Federal Circuit held in *McRO*, claims that recite specific solutions, and not merely a desired result, are not abstract ideas and are patent-eligible at *Alice* Step one. *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1312-14 (Fed. Cir. 2016). *See also Barry v. SeaSpine Holdings Corp.*, C.A. No. 21-806-RGA, 2022 WL 605816, at * 3 (D. Del. Jan. 26, 2022). Whether the Court considers only claim 1 or also considers claims 4, 5, 18, and 19, the claims recite a technical solution to the prior art problem of tuning data suffering from

inaccuracies rendering it unsuitable for media measurement by AMEs. *See* D.I. 1, Ex. A, 14:43-49.

For example, claim 1 recites: "***generat[ing] a model*** relating the respective tuning session durations to corresponding presentation session durations from ones of the first subset of the media presentation environments," and "***based on the model, determin[ing]*** … ***an expected presentation session duration*** for a given tuning session having a given tuning session duration," which provides an improvement to media measurement technology. D.I. 1, Ex. A at Cl. 1. Claims 4, 5, 18, and 19 further add that the model is based on a "threshold extent of similarity of the given tuning session duration." *Id*., Cl. 4. The approach of claim 1 (and even more so, the approach of claims 4, 5, 18, and 19) of estimating presentation data associated with tuning data provides a specific, technical solution to the technical problems of the prior art. The asserted claims are thus directed to patent-eligible subject matter. *See McRO,* 837 F.3d at 1312-14.

### b.    The Asserted Claims of the Asserted Patents are Directed to A Patent-Eligible Improvement in Computer Technology

As the Federal Circuit held in *Enfish*, claims that are directed to improvements in computer technology (and not merely directed to an idea that uses computers only as a tool) are patent-eligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("Software can make non-abstract improvements to computer technology just as hardware improvements can..."); *see also Olympus Corp. v. Maxell, Ltd.*, C.A. No. 18-216-MN, 2018 WL 5962471, at *4 (D. Del. Nov. 14, 2018) ("[T]he relevant inquiry at step one of Alice is whether the claims are directed to an improvement in computing devices or other technology.")

The claims of the Asserted Patents recite a solution to the prior art problem of widely available tuning data suffering from inaccuracies rendering it unsuitable for use by AMEs. In particular, the asserted claims describe "creat[ing] models used to accurately adjust media

presentation device data" that "*transform* collected tuning data from media presentation devices (e.g., STBs) into media presentation data." (D.I. 1, Ex. A, 4:4-6, 24:17-19 (emphasis added); D.I. 1, Ex. C, ¶ 17; *see VideoLabs, Inc. v. Meta Platforms, Inc.,* C.A. No. 22-680-JHS, 2024 WL 1716665, at \*9 (D. Del. Apr. 22, 2024) (holding claims directed to computer models patent eligible where the "model goes beyond conventional technology."). Here, the asserted claims go beyond conventional technology by allowing "device data [to] be more accurately analyzed based on data from a plurality of LPMs" (D.I. 1, Ex. A, 24:21-22), which "improves media measurement technology to increase data accuracy by performing massive data aggregations and computations against tuning data (e.g., big data as discussed previously)." D.I. 1, Ex. C, ¶ 18; *see Buffalo Pats., LLC v. Motorola Mobility LLC,* No. 22-CV-04540, 2023 WL 5858921, at \*3 (N.D. Ill. Sept. 11, 2023) (holding system that "improves accuracy" by "adapting a model and then operating in accordance with the adapted model" was a technological improvement and not an abstract idea.). This improvement alone is sufficient to render the claims patent-eligible.

### c.   Analogous Federal Circuit and Delaware Cases Have Found Claims Similar to The Asserted Claims Patent-Eligible

It is well-settled that courts should look at prior cases where a "similar or parallel nature" can be found. *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). The table below shows the similarity between claim 1 of the '058 Patent and claims the Federal Circuit found patent-eligible in *Amdocs*:

| '058 Patent Claim 1 | *Amdocs* Claim 1 | How the Claims Are Similar |
|---|---|---|
| A computing system comprising: machine readable instructions; and processor circuitry to execute the machine readable instructions to at least: | A computer program product embodied on a computer readable storage medium for processing network accounting information comprising: | Both claims recite generic computer hardware to execute a method. |

| access respective tuning session data from a plurality of media presentation devices … | computer code for receiving from a first source a first network accounting record; | Both claims recite receiving data from a first data source. |
|---|---|---|
| generate a model relating the respective tuning session durations to corresponding presentation session durations from ones of the first subset of the media presentation environments;<br><br>based on the model, determine, for a given one of the media presentation environments in the second subset of the media presentation environments, an expected presentation session duration for a given tuning session having a given tuning session duration… | computer code for correlating the first network accounting record with accounting information available from a second source; and<br><br>computer code for using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record. | Both claims recite correlating information from a first source with information from a second source, and using the correlated information from the second source to enhance or otherwise improve the data from the first source. |

*Amdocs*, 841 F.3d at 1299. As shown above, both claim 1 of the '058 patent and the *Amdocs* claim recite using data from a second source to transform data from the first source. Specifically, the "first subset of the media presentation environments" for which "presentation session data is available" (as described by the asserted claims of the Asserted Patents) is transformed into "***expected presentation session duration[s]***" for the "second subset of the media presentation environments" for which "presentation session data is not available." This newly created "expected presentation session duration[s]" based on the model described in the common specification thereby transforms the formerly unusable second subset of data into a new set of data that is suitable for use by AMEs and their customers. D.I. 1, Ex. C, ¶¶ 10, 14; *see* D.I. 1, Ex. A, 4:4-5, 4:41-50, 8:6-11. This is analogous to the way claim 1 in *Amdocs* "enhance[d] the first network accounting record" by correlating data obtained from a second source. *Amdocs*, 841 F.3d at 1299.

The Federal Circuit in *Amdocs* further explained that the "distributed" nature of the data was an important element of the claimed "enhance[ment]" because the claimed invention formed

"an unconventional technological solution (enhancing data in a distributed fashion) to a
technological problem (massive record flows which previously required massive databases).
*Amdocs*, 841 F.3d at 1300-01. The same is true of the asserted claims here, which obtain/access
tuning data from multiple different locations (e.g., homes of audience members):



FIG. 1

D.I. 1, Ex. A, FIG. 1. In locations 110 in Figure 1, "media presentation data is not collected,"
while such data *is* collected in locations 102. D.I. 1, Ex. A, 6:12-13. Before the estimation step,
the media tuners in locations 110 "transmit[] the tuning data to the example tuning storage 116 of
the example collection facility 114 via the example network 112." D.I. 1, Ex. A, 6:23-25. The
system then "estimates presentation session data for the tuning session[s] based on the created
models." (D.I. 1, Ex. A, 8:26-27.) Thus, as in *Amdocs*, the architecture of Figure 1 provides an
unconventional technological solution (enhancing data collected from a first set of locations (i.e.,
locations 110) with modeled data from a second set of locations (i.e., locations 102) to a
technological problem (technical limitations that prevent collection of presentation data at many
locations for which tuning data is available). *See Amdocs*, 841 F.3d at 1300.

This District also found a similar claim patent-eligible in *TakaDu Ltd. v. Innovyze, Inc.*, C.A. No. 21-291-RGA, 2022 WL 684409 (D. Del. Mar. 8, 2022). In *TakaDu*, the claim recited predicting the meter data for a first meter based on secondary data received from another source:

> 1.      A computerized method for monitoring a water utility network, the water utility network comprising at least a network of pipes for delivering water to consumers and a plurality of meters positioned within the water utility network, the method comprising:
>
> receiving meter data, the meter data representing a plurality of parameters measured by the meters, the parameters including at least flow or pressure of the water through the pipes;
>
> receiving secondary data from one or more sources external to the meters, the secondary data representing one or more conditions affecting flow or consumption of water in a region serviced by the water utility network; analyzing the meter data by statistically predicting meter data for a first meter based on second meter data from the water utility network and secondary data, wherein the second meter data comprises meter data other than the received first meter data, and comparing the received first meter data with the predicted meter data for the first meter to identify one or more water utility network events comprising at least one or more leakage events by detecting an anomaly if the received first meter data deviates from the predicted meter data for the first meter by a statistical deviation; and
>
> reporting the one or more water network events to a user via a user interface.

In finding the claim patent-eligible at *Alice* Step one, the court credited the specification's explanation that the method caused certain "GIS data" to be "enriched" and thus "improve[d] the quality of GIS data and gain new insight into network structure, not readily available through any other means." *TakaDu*, 2022 WL 684409, at *4. The court analogized the asserted claim to the patent-eligible claim of *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358 (Fed. Cir. 2020) and found that a "careful consideration of the claim requirements in light of the written description…

shows that the claims are directed toward a technological improvement." *TakaDu*, 2022 WL 684409, at *4. The court further explained that "the claims improve the capabilities of modeling, operating, and monitoring a water / resource distribution utility network in totality by incorporating a specific implementation of a solution that addresses express technical problems," and therefore were not directed to an abstract idea. *Id*. at *5.

Like the *TakaDu* claims, the claims of the Asserted Patents are directed to the use of a specific technical solution that improves on prior art systems by providing audience measurement data. D.I. 1, Ex. C, ¶¶ 17, 18, 21. The claims of the Asserted Patents recite a particular way of transforming a first dataset using information obtained from a second dataset; likewise, in the *TakaDu* patent, the claimed related to a similar process of enriching meter data by analyzing additional data obtained from other sources. Similar to the *TakaDu* claims, the invention of the Asserted Patents enriches and improves the quality of a first dataset using information obtained from a second dataset. D.I. 1, Ex. C, ¶ 21.

Based at least on the holdings of *Amdocs* and *TakaDu* and the similarity of the Asserted claims to those held patentable in those cases, the Court should deny VideoAmp's motion.

>    **d.**    **VideoAmp's Characterization of the Asserted Claims and Purportedly Analogous Cases are Inaccurate**
>
>        **i.**    **VideoAmp Has Failed to Identify an "Abstract Idea" That Comports with The Claims**

VideoAmp's proposal of what the claims of the Asserted Patents are supposedly "directed to" is missing the technical solutions to the prior art technical problem described above (each of which is recited in the asserted claims). Because VideoAmp fails to properly identify an alleged abstract idea to which the claims are directed, and instead engages in over-simplification of the claims, its motion should be denied. *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ("We have previously cautioned that courts 'must be careful to

avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims."); *see also G Licensing, S.A. v. HTC Corp.*, C.A. No. 17-83-LPS, 2019 WL 2904670 at *2 (D. Del. July 5, 2019) ("While it may be possible that [the asserted claim] could be accurately characterized as directed to some abstract idea, all I need to decide today is that the claim is not directed to the abstract idea articulated by defendant.").

More specifically, VideoAmp contends that the claims are "directed to" the process of "compiling data from media devices in an 'environment' to create a statistical model, and using that model to estimate missing data." D.I. 9 at 7. But VideoAmp's characterization of the claims is far too broad and vague, and ignores the claims' key inventive elements. *See Sunoco*, 2019 WL 4466766, at *10 (denying motion to dismiss where "[d]efendants chose to aim for a much broader and much more vague articulation of what the claims were purportedly directed to."). A proper characterization of what the claims are "directed to" is generating a model of audience viewing behavior based on presentation data collected from a first source in a first location to transform tuning data collected from a second source in a second location by estimating viewing behavior for corresponding audience members. Indeed, VideoAmp's proposed characterization ignores all the claim limitations that solve the problems in the prior art and improve computing technology.

For example, VideoAmp's characterization does not account for the fact that the claims recite generating a robust model to accurately estimate presentation session data, which solves the prior art problem of the inaccuracies associated with otherwise unusable tuning data. VideoAmp waves these issues away by asserting that the type of data does not matter, but it does here where that is the very point of the invention. Making the invention disappear through abstraction like VideoAmp does by ignoring the types of data at issue in the claims is exactly the

13

type of overly broad and vague characterization of an abstract idea that is prohibited. *Sunoco*, 2019 WL 4466766, at *10.

Similarly, VideoAmp's characterization ignores the requirement that information from a second source of data in a second location is used to transform data from a first source into estimated values. And VideoAmp's characterization also fails to address all of the relevant limitations recited by the Asserted Patents, completely ignoring claim 4, 5, 18, and 19's discussion of time-based thresholds which form the basis of modelling data for tuning sessions. VideoAmp's failure to account for the most important features of the asserted claims constitutes an impermissible overgeneralization. *See The Nielsen Co. (US), LLC v. TVision Insights, Inc.*, C.A. No. 21-1592-CJB, 2022 WL 3226318, at *4 (D. Del. Aug. 10, 2022) (finding that the proposed abstract idea "ignores the thrust of the invention. The claim clearly is not just about using 'two different methods' to monitor people or an environment. It is about doing so in a *particular* way.") (emphasis in original).

VideoAmp's proposed idea is so broad that it covers systems that the asserted claims of the Asserted Patents do not cover. For example, the proposed idea covers cases (i) in which sources of data besides presentation session data (such third-party demographic data) are used to estimate presentation session data, and (ii) the data used for estimation is not collected from a first group of devices and subsequently applied to provide estimates relating to a second set of devices. *See* D.I. 1, Ex. C, ¶ 28. These claim limitations—which are found in the asserted claims of the Asserted Patents—are precisely the types of limitations that render the claims an improvement on the computer technology of the prior art.

### ii.    VideoAmp's Cited Cases Are Inapposite

Relying on its oversimplification of the inventions covered by the asserted claims, VideoAmp attempts to draw analogies to numerous Federal Circuit cases holding other claims

unpatentable. But since VideoAmp fails to address critical elements of the asserted claims of the Asserted Patents, its comparisons are fatally flawed. Further, as explained below, the claims held not patentable in each of these cases are readily distinguished from the claims at issue here.

First, VideoAmp relies heavily on *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, (Fed. Cir. 2018). In *SAP*, the claims were limited to "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" (*Id*. at 1167). The Asserted Claims, in contrast, recite much more than that, describing the transformation of a first data set from a first source in a first location into expected values based on a model created from a second data set from a second source in a second location. *See* § III.B.1.c. The Asserted Claims are therefore more like those held patentable in *Amdocs*. *Id*. They are also more similar to the patentable claims in *McRO*, which recited a "combined order of specific rules that renders information into a specific format that is then used and applied to create desired results." *McRO*, 837 F.3d at 1315.[3]

Second, VideoAmp's reliance on *Electric Power Group, LLC. v. Alston, S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) is also misplaced, as the court merely held claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis" were unpatentable. *Id*. at 1533. Unlike in *Electric Power*, the claims here describe a patentable improvement in computer technology by transforming a first data set from a first source in a first

---

[3] Moreover, in accordance with *McRO*, the asserted claims do not impermissibly recite a result. *McRO*, 837 F.3d at 1312-14. The claims of the Asserted Patents instead "recite a particular means of estimating presentation sessions, not just the desired result of obtaining missing presentation session data." D.I. 1, Ex. C, ¶ 17; *see also id*., ¶ 18 ("All the claims therefore recite an improved audience measurement process, system, and method for producing a certain result in a certain way and not solely the result or effect produced.") The desired result of practicing the invention recited in the asserted claims is the accurate estimation of presentation data for certain tuning data. D.I. 1, Ex. A, 4:4-6, 24:17-19; *see also* D.I. 1, Ex. C, ¶ 18.

location into expected values based on a model created from a second data set from a second source in a second location.

Third, VideoAmp cites numerous cases that it claims hold mathematical formulas or processes are not patentable. D.I. 9 at 8-10 (*citing Gottschalk*, *PUREPREDICTIVE*, and *Stanford* as holding that mathematical processes are unpatentable). Indeed, the gravamen of VideoAmp's entire Motion is to argue that everything in the asserted claims in the Asserted Patents amounts to mathematical formula. But Courts have long held that "[c]laims that are directed to a non-abstract idea are not rendered abstract simply because they use a mathematical formula." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017) (quoting *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). And here, the claims are not "directed to" an abstract idea at all (*see* §§ III.B.1.a, III.B.1.c), and certainly not to the purported abstract idea proposed by VideoAmp or to a mathematical formula (*see* §§ III.B.1.d.i).

VideoAmp's overgeneralization of the asserted claims of the Asserted Patents and its failure to address key claim limitations render its cited cases inapposite, providing additional grounds to deny its motion. *See Nielsen*, 2022 WL 3226318, at *4; *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

### 2.    The Asserted Claims Are Patent Eligible Under Step Two of The *Alice* Test

#### a.    The Asserted Claims Recite an Inventive Concept

Step two of *Alice* "is satisfied when the claim limitations involve more than performance of well understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367. Should the Court find it necessary to address Step two of *Alice* (*i.e.,* if the asserted claims fail at Step one), Nielsen's Complaint asserts facts from the specification and from a declaration of Nielsen's expert witness, Virginia Lee, regarding the

16

inventiveness of the asserted claims of the Asserted Patents that contains allegations that:
"(1) assert that a limitation contained in the claim . . . is unconventional; (2) describe how that
limitation works; and (3) explain why that limitation provides benefits over the prior art."
*Sapphire Crossing LLC v. Quotient Tech., Inc.*, C.A. No. 18-1717-MN-CJB, 2020 WL 1550786
(D. Del. 2020) (holding that the presence of such allegations in an expert declaration is
"sufficient to defeat the Motion [to dismiss] at *Alice's* step two"). Far from being "conclusory"
as VideoAmp alleges (D.I. 9 at 15), Ms. Lee's declaration provides precisely the details
regarding inventiveness contemplated by *Sapphire Crossing*. [4] Thus, the asserted claims of the
Asserted Patents would still be patent-eligible under *Alice* Step two even if they were directed to
an abstract idea. *See Alice*, 573 U.S. at 217-18; *Berkheimer*, 881 F.3d at 1367-68.

      Specifically, Ms. Lee's declaration confirms that as of the priority date of the Asserted
Patents, "it was not well-understood, routine, or conventional among those of skill in the art to
model tuning data and presentation session data from households where both are available to
estimate presentation session data for households where presentation data is not available, as
claimed in all claims of the '058 and '250 Patents." D.I. 1, Ex. C, ¶ 26; *see also id.*, ¶ 30 ("All
the claims of the Patents recite the combination of obtaining tuning session data from all
households and presentation session data from households where it is available. The claims then
recite creating a model using tuning session data and presentation session data when both are
available. The claims then recite determining expected presentation session data for those

---

[4] VideoAmp's further claim that Ms. Lee's expert declaration cannot be considered under Rule
10(c) (D.I. 9 at 15) is unsupported by any relevant authority. Indeed, this Court consistently
considers the content of such declarations in evaluating patentability under § 101 at the pleading
stage. *See*, *e.g.*, *Topia Tech., Inc. v. Egnyte, Inc.*, C.A. No. 21-1821-CJB, 2023 WL 4364160, at
*5 (D. Del. July 6, 2023); *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, C.A. No. 21-1592-
CJB, 2022 WL 3226318, at *4 (D. Del. Aug. 10, 2022).

households where it is missing and then outputting that data. As of the priority date of the Patents, this combination of elements was not well-understood, routine, or conventional in the prior art."); *Peloton*, C.A. No. 19-1903-RGA (finding plaintiff had adequately pled that its claimed invention was unconventional because "the claims of the patents at issue recite the aspects that Plaintiff alleges in the amended complaint make them inventive"). Ms. Lee then states that "[t]he specification provides examples of how the Patents' invention works" (D.I. 1, Ex. C, ¶ 33), and proceeds to describe those examples in detail. *See* D.I. 1, Ex. C, ¶ 34 (describing "example tuning session and example presentation sessions determined for the metering data"); *id.*, ¶ 35 (describing use of "example data adjuster 120 [to] populate[] model(s) based on the tuning session data and presentation session data"); *id.*, ¶ 38 (describing determination of "an expected total presentation session by calculating a weighted average of the total presentation sessions of a selected tuning session"). And Ms. Lee provides a detailed explanation as to why these limitations were improvements over the prior art. D.I. 1, Ex. C, ¶ 20 ("Prior art systems did not use data from households that provided both tuning data and presentation session data to create models that could be used to estimate presentation sessions for households that did not provide presentation session data. In contrast to the prior art, this innovation allows use of the more voluminous tuning data from STBs (and other devices) without sacrificing data quality caused by the known weaknesses of tuning data, as described above); *id.*, ¶ 24 ("The invention of the Patents allows audience measurement companies to obtain the advantages of larger datasets from sources such as STB tuning data while avoiding its disadvantages by using a second set of more comprehensive data"); *see also id.*, ¶¶ 21-23. Ms. Lee's declaration is therefore sufficient to render dismissal inappropriate under *Alice* Step two. *Sapphire Crossing*, 2020 WL 1550786 (D. Del. 2020).

VideoAmp's further assertion that "it is not an inventive concept to take correlated data (such as the claimed tuning session and presentation data) and use that data to make predictions; it is algebra—solving for X in X+Y=Z when you know Y and Z" (D.I. 9 and 13) is yet another oversimplification of the claims. The claimed method does not simply solve for "X" in a linear equation—instead, it develops a *model* based on a second data set to *make predictions* about fcorresponding data for a first data set. The claims are thus far more complicated and inventive than VideoAmp asserts. And contrary to VideoAmp's arguments, there is no *per se* prohibition on the inclusion of math or statistical models in claim language. *See McRO*, 837 F.3d at 1313 (acknowledging that claims employing mathematical formulae are patentable if they improve a technological process).

VideoAmp's attempt to distinguish *Berkheimer* is also without merit, as the inventive concept described in the Complaint is grounded in the Asserted Patents (as explained above). D.I. 1, ¶ 42; *see* D.I. 1, Ex. C, ¶¶ 26, 30; D.I. 1, Ex. A, Claims 1-23; D.I. 1, Ex. B, Claims 1-23. The Court should therefore deny VideoAmp's motion. *See Berkheimer*, 881 F.3d at 1368.

**b.     The Asserted Claims Do Not Preempt the Field of the Invention**

The innovation that Nielsen references in the Complaint is narrow, describing the transformation of a first data set from a first source into expected values based on a model created from a second data set from a second source.[5] Far from claiming a "monopoly over any statistical analysis" (D.I. 9 at 12), the asserted claims do not even cover many types of *presentation data estimation techniques,* such as using third-party demographic data to estimate

---

[5] Contrary to VideoAmp's arguments (D.I. 9 at 12; *see id*. at 15), this innovation pled by Nielsen does not "contradict[]" the Asserted Patents' acknowledgement that prior art techniques utilized statistical analysis to perform audience measurement. The innovation is a significant advance over than the prior art techniques that VideoAmp identifies.

viewing within a tuning session. D.I. 1, Ex. C, ¶ 28. And to the extent VideoAmp argues that asserted claims nevertheless might cover more than one type of presentation data estimation technique, the Federal Circuit has repeatedly held that "[c]laims to the genus of an invention, rather than a particular species, have long been acknowledged as patentable" and do not raise preemption concerns as long as they do not cover all aspects of the claimed genus. *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1313 (Fed. Cir. 2016).

### C.      At a Minimum, Factual Issues Prevent Dismissal of the Case at this Stage

In addition to the reasons set forth above, VideoAmp's motion should be denied because the Complaint contains numerous allegations that, accepted as true at the pleading stage, prohibit granting VideoAmp's motion. Indeed, paragraphs 24-48 of the Complaint describe numerous reasons the patents are directed to "innovative techniques" that were "not well-understood, routine, or conventional among those of skill in the art." All of these allegations are appropriately supported by both (1) citations to the Asserted Patents, and (2) to a declaration attached to the Complaint from Ms. Lee. Thus, contrary to VideoAmp's assertions, the allegations in the Complaint are not simply bare recitations of "magic words." D.I. 9 at 14.

## IV.    CONCLUSION

For the reasons explained above, Nielsen respectfully requests the Court deny VideoAmp's motion to dismiss and find that the asserted claims of the Asserted Patents are patent-eligible under § 101.

OF COUNSEL:

Steven Yovits
Douglas Lewis
Andrew Wood
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Scott W. Doyle
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC  20007
Tel: (202) 342-8400

Joshua B. Long
KELLEY DRYE & WARREN LLP
515 Post Oak Boulevard, Suite 900
Houston, TX  77027
Tel: (713) 355-5000

Dated:  May 20, 2024
11514013/14944.00009

POTTER ANDERSON & CORROON LLP

By:  */s/Bindu A. Palapura*
   David E. Moore (#3983)
   Bindu A. Palapura (#5730)
   Andrew L. Brown (#6766)
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, DE  19801
   Tel:  (302) 984-6000
   dmoore@potteranderson.com
   bpalapura@potteranderson.com
   abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen
Company (US), LLC*

21