IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC,<br><br>Plaintiff,<br><br>v.<br><br>VIDEOAMP, INC.,<br><br>Defendant. | Civil Action No. 24-123-RGA |

## MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Steven Yovits, Douglas Lewis, Andrew Wood, Jason P. Greenhut, KELLEY DRYE & WARREN LLP, Chicago, IL; Joshua B. Long, KELLEY DRYE & WARREN LLP, Houston, TX,

    Attorneys for Plaintiff.

Susan E. Morrison, FISH & RICHARDSON P.C., Wilmington, DE; Aamir A. Kazi, FISH & RICHARDSON P.C., Atlanta, GA,

    Attorneys for Defendant.

March 31, 2025

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is VideoAmp's Motion to Dismiss. (D.I. 8). I have considered the parties' briefing. (D.I. 9, 15, 17). For the reasons set forth below, VideoAmp's Motion to Dismiss is GRANTED.

### I. BACKGROUND

Nielsen has filed suit against VideoAmp for infringement of United States Patent Nos. 11,871,058 ("the '058 patent") and 11,856,250 ("the '250 patent"). (D.I. 1).

Both asserted patents claim methods of "modeling audience viewing behavior" in industries such as television using audience viewing data collected by set-top boxes and other instruments. (D.I. 15 at 2). Specifically, the patents are concerned with improving users' interpretation of "tuning session data[,]" a form of data that "provides the channel a device . . . was tuned to and for how long." (*Id.* at 6). One problem with tuning session data is "phantom viewing[,]" which occurs when, for example, the set-top box collecting the tuning session data is on, but the television itself is off, leading to inflated estimates of viewing behavior. (*Id.*).

The asserted patents seek to solve this problem through the use of another form of data: "presentation session data[.]" (*Id.* at 7). Unlike tuning session data, "[p]resentation session data . . . captures . . . data about media consumption when the television is on and displaying media from a reported content source, such as a channel." (*Id.*). The asserted patents describe collecting tuning session data alongside presentation session data (or other forms of data) and "creating a *model* that describes the relationship between tuning session data and presentation session data when both are available." (*Id.* at 4). The asserted patents then describe "using that model to obtain *expected* presentation session data for media presentation environments where presentation session data is not available." (*Id.*). VideoAmp moves to dismiss on the grounds that the asserted patents

2

claim unpatentable subject matter under 35 U.S.C. § 101. (D.I. 8, 9).

## II. LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing

3

patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of [the] claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski*, 561 U.S. at 610–11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

## III. DISCUSSION

### A. Claim 1 of the '058 Patent Is Representative.

The parties dispute whether claim 1 of the '058 patent is representative. (D.I. 9 at 4–7; D.I. 15 at 4–6). I find that it is.

A claim is representative of other claims if it is "substantially similar and linked to the same abstract idea" as the claims it represents. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Claim 1 reads:

> 1. A method comprising:
>
>> obtaining respective tuning session data from a plurality of media presentation devices, corresponding ones of the media presentation devices in respective ones of media presentation environments, the respective ones of the media presentation environments including at least one media output

4

>   device to present media from a corresponding one of the media presentation devices, the respective tuning session data from respective ones of the media presentation devices indicative of a tuning session having a tuning session duration, the tuning session duration indicative of an amount of time between interactions with a corresponding one of the media presentation devices, wherein presentation session data is available for a first subset of the media presentation environments, and wherein presentation session data is not available for a second subset of the media presentation environments;
>
>   obtaining, for ones of the first subset of the media presentation environments, respective presentation session data indicative of a presentation session duration during which media corresponding to a respective tuning session was presented on the respective at least one media output device by the media presentation device within a respective tuning session duration;
>
>   generating, by performing one or more operations with processor circuitry, a model relating the respective tuning session durations to corresponding presentation session durations from the ones of the first subset of the media presentation environments;
>
>   based on the model, determining, by performing one or more operations with the processor circuitry, for a given one of the media presentation environments in the second subset of the media presentation environments, an expected presentation session duration for a given tuning session having a given tuning session duration; and
>
>   causing, by performing one or more operations with the processor circuitry, presentation of the expected presentation session duration for the given tuning session from the given one of the media presentation environments.

'058 patent, claim 1. VideoAmp argues that claim 1 is representative because it contains the five "same principal steps" as the other independent claims Nielsen asserts. (D.I. 9 at 4). Those steps include: (1) obtaining tuning session data, which can be used to calculate "tuning session durations"; (2) obtaining presentation session data, which can be used to calculate "presentation session durations"; (3) generating a statistical model relating the two kinds of data; (4) using the model to calculate "expected presentation duration" for environments where presentation session data is not available; and (5) presenting that presentation session duration. (*Id.* at 4–5). VideoAmp further argues that the '058 patent's other independent claim, claim 15, "differ[s] only in the *type*

5

of data considered in the claimed statistical analysis"—"on/off duration" data rather than tuning session data—and that the dependent claims merely "add the step of obtaining additional data," "add[] the ability to identify the source 'environments' from which data was collected," and "recite generic considerations of the statistical model[.]" (*Id.* at 9). The '250 patent, VideoAmp concludes, claims a "'computing system' to carry out substantially the same method claimed in the '058 [p]atent." (*Id.*).

Nielsen responds that claim 1 cannot represent claims 4, 5, 18, and 19 of each of the asserted patents. (D.I. 15 at 4–6). Claims 4 and 18 recite that "multiple ones of the tuning session durations [are] within a threshold extent of similarity of the given tuning session duration." '058 and '250 patents, claims 4 and 18. Claims 5 and 19 recite that "the threshold extent of similarity is a threshold of time similarity." '058 and '250 patents, claims 5 and 19. According to Nielsen, "These claims recite specific, concrete details regarding the patents' key innovation—the process of creating expected presentation session data based on the claimed model." (D.I. 15 at 5).

I disagree. The claims Nielsen identifies limit claim 1 by requiring that when considering multiple tuning session durations, those tuning session durations should be within a "threshold extent of similarity." That is a sensible limitation, but still "substantially similar and linked to the same abstract idea" as claim 1. *Content Extraction*, 776 F.3d at 1348. Though Nielsen argues, "These claims recite specific, concrete details regarding the patents' key innovation" (D.I. 15 at 5), its own brief spends barely more than a page elaborating on what those details are, instead asserting in conclusory fashion, "[C]laims 4, 5, 18, and 19 of the Asserted Patents add substantive elements. . . ." (*Id.*). I find that claim 1 is representative.

## B. Claim 1 Fails the First Step of *Alice*.

Concluding that claim 1 of the '058 patent is representative, I now proceed to the first step

6

of *Alice*: determining whether claim 1 is "directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. I find that it is.

"[C]laims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis are directed to an abstract idea.'" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). Claim 1 is directed to the idea of collecting information (tuning session data and presentation session data), analyzing it (modeling their relationship in order to calculate expected presentation session data when only tuning session data is available), and then displaying the results. That is abstract. That this calculation takes place in the specific context of modeling audience viewing behavior makes no difference: claims "directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose," are abstract. *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021) (quoting *Parker v. Flook*, 437 U.S. 584, 595 (1978)).

Nielsen raises two arguments in response. First, Nielsen argues that claim 1 recites "specific solutions, and not merely desired results"; second, that "claims that are directed to improvements in computer technology (and not merely directed to an idea that uses computers only as a tool) are patent-eligible." (D.I. 15 at 6–7).[1] I find neither argument persuasive. In support of its first argument, Nielsen cites my decision in *Barry v. SeaSpine Holdings Corp.*, 2022 WL 605816, at

---

[1] These two arguments contain significant overlap. Nielsen cites *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312–14 (Fed. Cir. 2016) in support of its first argument, for example. (D.I. 15 at 6–7). That case stated, "We therefore look to whether the claims in these patents focus on a specific *means or method that improves the relevant technology* or are instead directed to a *result or effect* that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314 (emphasis added). I address *McRO* in my discussion of Nielsen's second argument.

7

\*3 (D. Del. Jan. 26, 2022). The patent in that case concerned "systems and methods for correcting spinal deformities, including scoliosis." *Id.* at \*1. Because the claim at issue disclosed how to achieve its desired result, rather than claiming the result itself, I found that the asserted patent was not directed to an abstract idea under step one of *Alice*. *See id.* at \*4. I also noted, however, that the "idea of 'rotating two or more vertebrae at the same time'" to which the patent was directed was not an abstract idea, because it was "a concrete surgical procedure, not a mental process or mathematical algorithm." *Id.* at \*3. Claim 1 of the '058 patent, on the other hand, is clearly directed to a mental process or mathematical algorithm, and is therefore abstract, even if it is directed to a specific purpose. *See Stanford*, 991 F.3d at 1250.

More importantly, I disagree with Nielsen that claim 1 recites a specific solution. The key paragraph in claim 1 reads, "generating, by performing one or more operations with processor circuitry, a model relating the respective tuning session durations to corresponding presentation session durations from the ones of the first subset of the media presentation environments. . . ." '058 patent, claim 1. Instructing that the reader "generat[e] . . . a model" without further specification is akin to "merely instruct[ing] the user to analyze the data[,]" an approach that is squarely abstract. *TakaDu Ltd. v. Innovyze, Inc.*, 2022 WL 684409 (D. Del. Mar. 8, 2022).

My discussion in *TakaDu*, 2022 WL 684409, at \*5 provides a helpful point of comparison. In that case, I determined that patents "recit[ing] a way to identify water leakage events" by "comparing data received from a water meter with statistically predicted values" were not directed to an abstract idea. *Id.* at \*6. Like VideoAmp here, the defendant in *TakaDu* relied on *Electric Power* to argue that the relevant claims were directed to "collecting information, analyzing it, and displaying (or storing) the results." *Id.* at \*4. The claims in *Electric Power* were directed to "systems and methods for performing real-time performance monitoring of an electric power grid

8

by collecting data from multiple data sources, analyzing the data, and displaying the results." *Electric Power*, 830 F.3d at 1351. I found that *Electric Power* was inapposite because, where the claim language in *Electric Power* "merely instruct[ed] the user to analyze the data[,]" "TakaDu's claims teach ways of analyzing the data." *TakaDu*, 2022 WL 684409 at *5. Between *TakaDu* and *Electric Power*, claim 1 falls under the *Electric Power* side of the line.

Nielsen's second argument is no more persuasive. Because, Nielsen argues, "the asserted claims describe 'creat[ing] models used to accurately adjust media presentation device data' that '*transform* collected tuning data from media presentation devices (e.g., STBs) into media presentation data'" (D.I. 15 at 7–8), they constitute "non-abstract improvements to computer technology. . . ." (*Id.* at 7) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). But neither the representative claim nor the other claims in the asserted patents say that. The word "transform" appears nowhere in the claims of either asserted patent, *see* '058 patent, claims 1–23; '250 patent, claims 1–23, and is instead drawn from their specifications, *see* '058 patent, 4:4–10; '250 patent, 4:4–10. Rather than improving the functioning of the technology itself, Nielsen's claims improve one's *interpretation* of the data made available by that technology.

Comparison to other cases further demonstrate that claim 1 is not directed to an improvement in computer technology. In *SAP*, 898 F.3d at 1163, the Federal Circuit considered claims concerning "systems and methods for performing certain statistical analyses of investment information." Concluding that "[t]he focus of the claims . . . [was] on selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis," *id.* at 1167, the Federal Circuit determined that the claims were ineligible. The same principle applies here.

Nielsen argues that its claims more closely resemble those found in *McRO*, 837 F.3d at

9

1315. (D.I. 15 at 6–7, 15). Those claims concerned "a method for automatically . . . producing accurate and realistic lip synchronization and facial expressions in animated characters." *McRO*, 837 F.3d at 1307. Rejecting arguments that the "claims [were] unpatentable algorithms[,]" *id.* at 1310, the Federal Circuit concluded, "claim 1 is directed to a patentable, technological improvement over the existing, manual 3–D animation techniques[,]" *id.* at 1316.

Claim 1 falls closer to *SAP* than *McRO*, for the same reasons the Federal Circuit provided in *SAP*:

> The claims in *McRO* were directed to the creation of something physical—namely, the display of "lip synchronization and facial expressions" of animated characters on screens for viewing by human eyes. The claimed improvement was to how the physical display operated (to produce better quality images), unlike (what is present here) a claimed improvement in a mathematical technique with no improved display mechanism. The claims in *McRO* thus were not abstract in the sense that is dispositive here. And those claims also avoided being "abstract" in another sense reflected repeatedly in our cases (based on a contrast not with "physical" but with "concrete"): they had the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.

*SAP*, 898 F.3d at 1167 (citations omitted). Because claim 1's model does not improve the function or capabilities of the instruments whose data it uses, it cannot be considered an improvement to computer technology.

Finally, Nielsen cites *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016). (D.I. 15 at 8–10).[2] One of the representative claims in that case concerned "a system, method, and computer program for merging data in a network-based filtering and aggregating platform as well as a related apparatus for enhancing networking accounting data records."

---

[2] VideoAmp notes that the Federal Circuit reached its conclusion in *Amdocs* under the second *Alice* step. (D.I. 17 at 5). This is true. *Amdocs*, 841 F.3d at 1300. However, as the *Amdocs* court observed, "Recent cases . . . suggest that there is considerable overlap between step one and step two. . . ." *Id.* at 1294. As cases like *McRO* demonstrate, it is acceptable to consider the question of whether a patent claims an improvement to computer technology at the first *Alice* step. *See McRO*, 837 F.3d at 1316.

10

*Amdocs*, 841 F.3d at 1291. The Federal Circuit held that the claim was eligible. *See id.* at 1302. Because, Nielsen argues, "Both claims [in *Amdocs* and here] recite correlating information from a first source with information from a second source, and using the correlated information from the second source to enhance or otherwise improve the data from the first source" (D.I. 15 at 9), claim 1 is also eligible. Again, however, while the *Amdocs* court concluded that the "distributed enhancement" in that case was "an unconventional technological solution to [the] technological problem" of "massive record flows which previously required massive databases[,]" *Amdocs*, 841 F.3d at 1300, claim 1 of the '058 patent does not purport to "enhance" tuning session data or otherwise improve the technology providing that data. Rather than supporting Nielsen's case, *Amdocs* demonstrates why claim 1 is not directed to an improvement to computer technology.

### C. Claim 1 Fails the Second Step of *Alice*.

At step two of *Alice*, I examine the claim limitations "both individually and as an ordered combination" to determine whether the claims disclose an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221 (cleaned up). If a claim is directed to an abstract idea at step one, to be patentable at step two the claim "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal quotation marks omitted) (citing *Mayo*, 566 U.S. at 77, 79).

Much of the analysis at step one carries over to step two. As the Federal Circuit stated in *In re Killian*:

> We have explained that claims for methods that improve an existing technological process include an inventive concept at step two. And claims that recite a specific, discrete implementation of the abstract idea rather than preempting all ways of achieving an abstract idea using a computer may include an inventive concept. But claims to an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer

11

> concepts in a conventional way do not pass muster at step two. Neither attempting to limit the use of the idea to a particular technological environment nor a wholly generic computer implementation is sufficient.

45 F.4th 1373, 1382–83 (Fed. Cir. 2022) (cleaned up) (internal citations omitted). Clearly, the "processor circuitry" on which claim 1 relies, '058 patent, claim 1, is a generic computer component. *See Alice*, 573 U.S. at 226 (explaining that terms such as "data processing system," "communications controller" and "data storage unit" are "purely functional and generic").

The parties dispute, however, whether claim 1 employs "processor circuitry" in a "conventional" way. (D.I. 9 at 11–14; D.I. 15 at 16–19). I conclude that it does.

Claim 1 takes a familiar and abstract idea and limits it to a particular technological environment. That fails to pass muster under § 101. As VideoAmp points out, "it is not an inventive concept to take correlated data (such as the claimed tuning session and presentation data) and use that data to make predictions; it is algebra. . . ." (D.I. 9 at 12–13). Furthermore, it is not enough for Nielsen to argue that the analysis of correlated data has yet to be applied to the specific context of tuning session data and presentation session data, as that "simply provide[s] further narrowing of what are still mathematical operations." *SAP*, 898 F.3d at 1169; *see also Electric Power*, 830 F.3d at 1354 ("limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core"). Indeed, the thrust of Nielsen's argument is that generating models using "both tuning data and presentation session data" was unknown to the prior art (D.I. 15 at 16–19)—but that argument proves little. "To the extent [the plaintiff is suggesting that its alleged 'inventive concept' is not found in the prior art, that contention is unavailing at step two, as 'a claim for a new abstract idea is still an abstract idea.'" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1294 (Fed. Cir. 2024) (quoting *Synopsys, Inc. v. Mentor*

*Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)); *see also SAP*, 898 F.3d at 1163 ("We may assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is not enough for eligibility.") (cleaned up).

Finally, the parties dispute the extent to whether I should consider Nielsen's expert declaration from Ms. Virginia Lee. (D.I. 9 at 14–15; D.I. 15 at 17 n.4). Having concluded that claim 1 simply applies an abstract idea to a particular technological environment, I am not persuaded by Nielsen's argument, regardless of Ms. Lee's declaration. It is therefore unnecessary to determine whether it is proper to consider her declaration.

Because I find that representative claim 1 of the '058 patent is directed to an abstract idea and fails to recite an inventive concept, *see* Alice, 573 U.S. at 217–18, I conclude that Nielsen's asserted claims are directed to unpatentable subject matter under § 101.

## IV.   CONCLUSION

For the reasons set forth above, VideoAmp's Motion to Dismiss (D.I. 8) is GRANTED.

An appropriate order will issue.